IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

KIMBERLY CORDOVA,

*Plaintiff*,

v.

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,

*Defendants.*

## COMPLAINT

Plaintiff, Kimberly Cordova ("Ms. Cordova"), by and through her counsel, McDermott Law, LLC, for her Complaint against Defendant The Lincoln National Life Insurance Company ("Lincoln"), states, alleges, and avers as follows:

### PRELIMINARY ALLEGATIONS

1.  This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves claims by Plaintiff for employee benefits under employee benefit plans regulated and governed under ERISA. Jurisdiction based on a federal question is predicated under these code sections as well as 28 U.S.C. § 1331. This action is brought to recover benefits under the terms of employee benefit plans, to enforce Plaintiff's rights under the terms of employee benefit plans, and to clarify Plaintiff's rights to future benefits under the plans. Plaintiff seeks relief, including but not limited to, payment of benefits, prejudgment and post-judgment interest, reinstatement of the benefit plans at issue herein, and attorneys' fees and costs.

2. Plaintiff was an employee of Centennial Lending, LLC ("Centennial"), and during her employment worked for Centennial within the judicial boundaries of the District of Colorado.

3. As an employee of Centennial, Plaintiff was a participant in the Centennial Lending Employee Benefits Program ("Plan"), which included (among other benefits) a long-term disability ("LTD") income replacement benefit insured by Group Long-Term Disability Insurance Policy No. 000010206379 ("LTD Policy") and extension of death benefits without payment of premiums ("WOP") insured by Group Insurance Policy No. 000010206376 ("Life Policy").

4. The LTD Policy was delivered in the state of Colorado and is subject to the laws of that jurisdiction.

5. The Life policy was "issued in" Colorado as that phrase is defined by Colo. Rev. Stat. § 10-3-1116(8), and is, therefore, governed by Colorado law where applicable.

6. The Plan, LTD Policy and Life Policy ("Policies") constitute "employee benefit plans" as that term is defined by 29 U.S.C. § 1002(3).

7. At all times relevant, Plaintiff was employed by Centennial, and was a covered "participant" in and "beneficiary" of the Plans, as those terms are defined by 29 U.S.C. § 1002(7) and (8).

8. Pursuant to the terms and conditions of the employer's benefit plan and the Policies, Plaintiff is entitled to LTD and WOP benefits for so long as Plaintiff remains disabled as required under the terms of the Plan and Policies.

9. Lincoln is and at all relevant times was registered with the Colorado Division of Insurance to conduct, and does conduct, the business of insurance in the State of Colorado.

10. Lincoln is the insurer of benefits under the LTD and Life Policies.

11. Plaintiff is informed and believes that Lincoln acted in the capacity of a claim administrator under the Plan and the Policies.

12. In administering Ms. Cordova's claims, Lincoln acted under an inherent conflict of interest, which affected Lincoln's claims determinations.

13. Venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2).

## FIRST CLAIM FOR RELIEF

### Claim for Relief Under ERISA § 502(a)(1)(b) and 29 USC § 1132(a)(1)(b)

14. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

15. During Plaintiff's employment and while she was covered under the Plan and Policies, Plaintiff became entitled to LTD and WOP benefits under the terms and conditions of the Plan and Policies because she suffered a disability rendering her "disabled" as defined under the terms of the Policies.

16. Plaintiff's date of disability was on or around May 18, 2022.

17. Ms. Cordova filed a short-term disability ("STD") claim because she was unable to perform each of the Main Duties of her Own Occupation.

18. Lincoln approved Ms. Cordova's STD claim under the "Own Occupation" definition of disability through the maximum benefit period of August 17, 2022.

19. Although Ms. Cordova hoped to return to part-time work with accommodations, she was physically unable to and moved forward with filing a long-term disability claim.

20. Despite Lincoln previously determining that Ms. Cordova's medical conditions prevented her from performing the Main Duties of her Own Occupation in the STD claim, Lincoln reached the opposite conclusion under the same definition of disability in the LTD claim on September 19, 2022.

21. On December 5, 2022, in full compliance with 29 U.S.C. § 1133, Ms. Cordova timely submitted the mandatory internal appeal to Lincoln providing a thorough history of her medical visits;

3

lists and explanations of her symptoms and diagnoses; an explanation as to why she cannot perform her occupation; letters from her doctors and medical records; and a paragraph explaining why she was appealing.

22. On December 22, 2022, Lincoln sent Ms. Cordova a copy of its medical records reviewer's report and provided her with an opportunity to submit a response.

23. On January 10, 2023, Ms. Cordova provided Lincoln with additional medical records, and her treatment provider's rebuttal to Lincoln's medical records review.

24. On February 14, 2023, Lincoln upheld its adverse decision to deny Ms. Cordova's claim for LTD benefits.

25. With the assistance of the undersigned counsel, Plaintiff filed a second-level appeal of Lincoln's adverse LTD benefit decision and a claim for WOP benefits on August 7, 2023.

26. On September 6, 2023, Lincoln provided a copy of Mitchell Stotland, M.D.'s Peer Review and provided Ms. Cordova the opportunity to respond to the Peer Review with any written comments or documentation.

27. On September 11, 2023, the Social Security Administration ("SSA") approved Ms. Cordova's claim for Social Security Disability benefits.

28. On the same date the SSA concluded Ms. Cordova was incapable of performing any substantially gainful occupation, Lincoln reached the opposite conclusion in the WOP claim.

29. Ms. Cordova submitted responses to Lincoln in the LTD claim addressing Dr. Stotland's Peer Reviews, which included treatment provider opinions, opinions from the functional capacity evaluator, her Social Security Disability file, additional medical records, and other evidence verifying her disability.

30. With the assistance of the undersigned counsel, Plaintiff filed an appeal of the denial of WOP benefits on November 9, 2023.

31.     Despite the additional evidence supporting Plaintiff's entitlement to LTD and WOP benefits, Unum erroneously and wrongfully continued to uphold its denial of Plaintiff's claim for LTD and WOP benefits by letters dated December 27, 2023.

32.     Defendant Lincoln breached the terms of the Plan and Policies. Furthermore, the Defendant violated ERISA in the following respects:

    (a) Failing to pay LTD benefit payments and provide WOP coverage to Plaintiff when Defendant knew, or should have known, that Plaintiff was entitled to those benefits under the terms of the Plan and Policies;

    (b) Failing to provide a prompt and reasonable explanation of the bases relied on under the terms of the Plan and Policies for denying Plaintiff's claims for LTD and WOP benefits;

    (c) After Plaintiff's claims were terminated, Lincoln (in violation of ERISA) failed to adequately describe the additional material or information necessary for Plaintiff to perfect her claims along with an explanation of why such material is or was necessary;

    (d) Failing to adequately and in good faith investigate the merits of Plaintiff's disability claims and failing to provide a full and fair review of Plaintiff's claims properly and adequately;

    (e) Failing to consider all medical records and opinions from Plaintiff's medical providers;

    (f) Elevating the opinions of its non-treating record reviewers over those of Plaintiff's treating medical providers;

    (g) Failing to engage in a meaningful dialogue with Plaintiff and her treating medical providers;

5

  (h) Cherry-picking medical records that favored its self-interested adverse benefit determinations;

  (i) Ignoring Plaintiff's subjective symptoms even though they were observed or verified by others, including her treating medical providers;

  (j) Failing to gather sufficient evidence to demonstrate that Plaintiff's medical conditions had improved to the point that she was no longer disabled and could (for eight hours a day and 40 hours a week) reliably and consistently perform the Main Duties of her Own Occupation; and

  (k) Placing its financial interests ahead of Plaintiff's interests.

33. Plaintiff alleges that Defendants wrongfully denied her LTD and WOP benefits by other acts or omissions not alleged in this Complaint, but which may be found in the record or discovered in this litigation.

34. Following the denial of her LTD and WOP benefits, Plaintiff exhausted all administrative remedies required under ERISA, and Plaintiff has performed all duties and obligations required of her under the Plan and Policies.

35. Plaintiff has satisfied all conditions precedent to receive LTD benefits and WOP coverage under the Policies.

36. As of the filing of this Complaint, Defendant has wrongfully withheld LTD benefits from Ms. Cordova since August 16, 2022.

37. Defendant has wrongfully refused to extend Ms. Cordova's death benefit without payment of premiums since the date she became disabled.

38. Defendant's wrongful withholding of Ms. Cordova's LTD benefits and refusal to provide WOP coverage has caused her to experience significant harms and losses – both economic and non-economic.

39. Defendant's adverse benefit determinations have compelled Ms. Cordova to institute litigation to recover benefits and coverage owed to her under the Policies.

40. As a direct and proximate result of Lincoln's adverse benefit determinations, Plaintiff has been required to incur attorneys' costs and fees in pursuing this action for the LTD benefits owed and WOP coverage provided under the respective Policies. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

41. Defendant's acts and omissions have created uncertainty where none should exist; therefore, Plaintiff is entitled to enforce her rights and to clarify her right to future benefits under the terms of the Plan and Policies.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1. Declare that Plaintiff is entitled to LTD benefits and WOP coverage under the terms of the Plan and Policies;

2. Order Defendant to pay all past-due LTD benefits owed under the Plan and LTD Policy from the date they became payable through the life of such benefits together with interest (both statutory and moratory) on each monthly payment from the date it became due;

3. Order Defendant to provide Plaintiff's life insurance benefits without the payment of premiums as required by the Life Policy;

4. Order Defendant to pay Plaintiff's costs of suit, including reasonable attorneys' fees under ERISA § 502(g);

5. Such other and further relief this Court deems just and proper.

Respectfully submitted this 9th day of January 2024,

**_s/ MarySusan Kern_**
MarySusan Kern, #50730
Shawn E. McDermott, #21965
MCDERMOTT LAW, LLC
4600 S. Ulster Street, Suite 800
Denver, CO 80237
(303) 964-1800
(303) 964-1900 (fax)
*marysue@mcdermottlaw.net*
*shawn@mcdermottlaw.net*

Plaintiff's Address
211 Valley Ave.
Lochbuie CO 80603

8